NESENOFF & MILTENBERG, LLP
ANDREW T. MILTENBERG, Esq. (admitted *pro hac vice*)
amiltenberg@nmllplaw.com
STUART BERNSTEIN, Esq. (admitted *pro hack vice*)
sbernstein@nmllplaw.com
TARA J. DAVIS, Esq. (admitted *pro hac vice*)
tdavis@nmllplaw.com
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone:  (212) 736-4500

HATHAWAY PARKER
MARK HATHAWAY, Esq.
mark@hathawayparker.com
JENNA E. PARKER, Esq.
jenna@hathawayparker.com
445 S. Figueroa Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 529-9000

*Attorneys for Matthew Boermeester*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MATTHEW BOERMEESTER,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, GRETCHEN DAHLINGER MEANS, individually and in her official capacity, and Dr. AINSLEY CARRY, individually and in his official capacity,<br><br>    Defendants. | Case No.: 2:19-cv-02137-FMO-MRW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>DATE:  August 29, 2024<br>TIME:   10:00 a.m.<br>JUDGE:  Hon. Fernando M. Olguin<br>CTRM:  6D |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................8

I.   INTRODUCTION ...........................................................................................8

II.  STATEMENT OF FACTS ...............................................................................8

    A.   Despite Both Matthew Boermeester and Zoe Katz Insisting That
         Intimate Partner Violence Did Not Occur, USC Expels Mr.
         Boermeester ..........................................................................................8

    B.   Mr. Boermeester's Subsequent Litigation Against Defendants...................9

    C.   The State Court Decisions Have Limited Bearing in This Litigation.........10

III. STANDARD OF REVIEW ............................................................................12

IV.  LEGAL ARGUMENT ...................................................................................13

    A.   Success in the Mandamus Proceeding Was Not a Prerequisite to
         Recovery ..............................................................................................13

    B.   The California Supreme Court and Court of Appeal Rulings Do Not
         Preclude Mr. Boermeester from Establishing an Essential Element of
         Each of His Claims, and Mr. Boermeester Has Pleaded All Necessary
         Elements of His Claims ........................................................................17

         1.   Issue Preclusion Does Not Bar Mr. Boermeester's First
             and Second Causes of Action Under Title IX...................................18

         2.   Issue Preclusion Does Not Bar Mr. Boermeester's Third
             Cause of Action Under 42 U.S.C. § 1983, and USC Is
             Engaged in State Action...................................................................25

         3.   Issue Preclusion Does Not Bar Mr. Boermeester's Fourth
             Cause of Action for Breach of Contract or Fifth Cause of
             Action for Promissory Estoppel, and Mr. Boermeester
             Has Pleaded All Elements of Both Causes of Action.......................27

         4.   Issue Preclusion Does Not Bar Mr. Boermeester's Sixth
             Cause of Action for Negligence, and Mr. Boermeester
             Has Pleaded all Necessary Elements of a Negligence
             Claim .............................................................................................29

5.    Issue Preclusion Does Not Bar Mr. Boermeester's Seventh Cause of Action for IIED, and Mr. Boermeester Has Pleaded all Necessary Elements of an IIED Claim ................... 30

C.    Leave to Amend Should Be Granted if the Court Determines that Mr. Boermeester Has Failed to State a Claim ...................................................... 32

V.    CONCLUSION ...................................................... 32

1

## TABLE OF AUTHORITIES

2

### Federal Cases

3

4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................ 13

5

6

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ................................................ 12

7

8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................ 13

9

10

*Cannon v. University of Chicago*,
   441 U.S. 677 (1979) ................................................................ 18

11

12

*Doe v. Baum*,
   903 F.3d 575 (6th Cir. 2018) .......................................... 20, 21

13

14

15

*Doe v. Cal. Inst. of Tech.*,
   No. 18-09178, 2019 U.S. Dist. LEXIS 169672, 2019 WL 4238888 (C.D. Cal. Apr. 30, 2019) ................................................ 14

16

17

*Doe v. Cal. Inst. of Tech.*,
   No. 19-01005, 2019 U.S. Dist. LEXIS 230684, 2019 WL 8645652 (C.D. Cal. Aug. 13, 2019) .............................................. 14

18

19

*Doe v. Columbia Univ.*,
   831 F.3d 46 (2d Cir. 2016) .................................... 19, 21, 25

20

21

*Doe v. Marymount Univ.*
   297 F.Supp.3d 573 (E.D. Va. Mar. 14, 2018) ................. 20, 21

22

23

*Doe v. Miami Univ.*,
   882 F.3d 579 (6th Cir. 2017) ............................................. 21

24

25

*Doe v. Regents of the Univ. of Cal.*,
   23 F.4th 930 (9th Cir. 2022) ........................................ 19, 20

26

27

*Doe v. Regents of the University of California*,
   891 F.3d 1147 (9th Cir. 2018) ..................................... 13, 15

28

---

*Goss v. Lopez*,
    419 U.S. 565 (1975)...........................................................................30

*Heineke v. Santa Clara Univ.*,
    No. 17-CV-05285-LHK, 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017)...................26

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984)...........................................................................18

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005).........................................................................13

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) (en banc) ...............................................32

*Lyons v. England*,
    307 F.3d 1092 (9th Cir. 2002) ...........................................................20

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...........................................................12

*Neal v. Colo. State University-Pueblo*,
    No. 16-cv-873, 2017 WL 633045 (D. Colo. Feb. 16, 2017) ..........................21

*Russell v. Salve Regina Coll.*,
    649 F. Supp. 391 (D.R.I. 1986) .........................................................31

*Swartz v. KPMG, LLP*,
    476 F.3d 756 (9th Cir. 2007) ...........................................................13

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002).........................................................................18

*Wabakken v. Cal. Dep't of Corr. & Rehab.*,
    801 F.3d 1143 (9th Cir. 2015) ...........................................................18

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994) .........................................................20, 21

**State Cases**

*Alborzi v. University of Southern California*,
    55 Cal. App. 5th 155 (2020) ...........................................................15

*Alcorn v. Anbro Eng'g, Inc.*,
    2 Cal. 3d 493 (1970) ............................................................................31

*Boermeester v. Carry*,
    100 Cal.App.5th 383 (2024) ...........................................10, 12, 20

*Boermeester v. Carry*,
    15 Cal.5th 72 (2023) .......................................................10, 20, 25

*Boermeester v. Carry*,
    263 Cal.Rptr.3d 261 (2020) ...............................................................10

*Bushell v. JPMorgan Chase Bank, N.A.*,
    220 Cal. App. 4th 915 (2013) ...........................................................27

*City of Fresno v. Superior Court*,
    188 Cal. App. 3d 1484 (1987) .....................................................14, 15

*Conroy v. Regents of University of California*,
    45 Cal.4th 1244 (2009) .....................................................................29

*DeJung v. Superior Court*,
    169 Cal.App.4th 533 (2008) ..............................................................20

*Fahlen v. Sutter Central Valley Hospitals*,
    58 Cal. 4th 655 (2014) ......................................................................15

*Godfrey v. Steinpress*,
    128 Cal. App. 3d 154 (1982) ...............................................................30

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) .....................................................................30

*Kashmiri v. Regents of University of California*,
    156 Cal. App. 4th 809 (2007) .............................................................28

*People v. Carter*,
    36 Cal. 4th 1215 (2005) .....................................................................17

*Regents of University of California v. Superior Court*,
    4 Cal. 5th 607 (2018) ........................................................................30

*State Bd. of Chiropractic Exam'rs v. Superior Court,*
    45 Cal. 4th 963 (2009) ...................................................................... 17, 19

*Toyota of Visalia, Inc. v. New Motor Vehicle Bd.,*
    188 Cal.App.3d 872 (1997) ...................................................................... 11

*US Ecology, Inc. v. State of California,*
    129 Cal.App.4th 887 (2005) ...................................................................... 27

*Westlake Cmty. Hosp. v. Superior Court,*
    17 Cal. 3d 465 (1976) .............................................................. 14, 15, 16

## Federal Statutes

20 U.S.C. § 1681(a) ...................................................................... 19

42 U.S.C. § 1983 .............................................................. 15, 25, 26

## State Statutes

Calif. Civ. Code, § 1714, subd. (a) ...................................................... 29

Calif. Code Civ. Proc., § 1094.5 ..............................................*passim*

## Constitutional Provisions

11th Amendment.................................................................... 15

14th Amendment.............................................................. 9, 11

Cal. Const., Article I, § 28, subd. (f)(1) .......................................... 30

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants the University of Southern California ("USC"), Gretchen Dahlinger Means, individually and in her official capacity, and Dr. Ainsley Carry, individually and in his official capacity, (collectively "Defendants"), argue in their Motion to Dismiss that the state court mandamus litigation precludes the instant federal litigation.  However, there is no requirement under the law that Plaintiff Matthew Boermeester needed to succeed in the mandamus litigation before bringing this action.  The claims, evidence, and standard of review in the mandamus action all differ considerably from those in the instant federal action, such that none of the claims in this action were previously litigated or resolved in state court.  Defendants also ask this Court to place a higher burden on Mr. Boermeester than the law requires, in effect seeking to require Mr. Boermeester to present a *prima facie* case on his claims prior to any discovery in this matter.  The law does not require that.  Mr. Boermeester has met his burden under the law, which is to provide a plain statement of the claim with facts showing he is entitled to relief.  As such, Defendants' Motion to Dismiss must be denied in its entirety.

## II.    STATEMENT OF FACTS

### A. Despite Both Matthew Boermeester and Zoe Katz Insisting That Intimate Partner Violence Did Not Occur, USC Expels Mr. Boermeester

As of January 21, 2017, Plaintiff Matthew Boermeester was a 22-year-old senior full-scholarship athlete at the University of Southern California ("USC" or "University"). Complaint ¶ 27.  Mr. Boermeester had been dating Zoe Katz, also 22 years old and a Senior at USC, for over a year.  Complaint ¶ 31.  Upon returning to Ms. Katz's off-campus residence, the two engaged in horseplay and Mr. Boermeester playfully put a hand on Ms. Katz's neck, in a joking, intimate manner, and then they entered Ms. Katz's building together.  Complaint ¶ 34.  Student Dylan Holt, who had seen part of their interaction through his window, told his roommate Tanner Smith what he thought he had

observed—an alleged altercation.  Complaint ¶¶ 8, 42.  Tanner Smith later spoke to his father Peter Smith, Coach of the USC Men's Tennis team, about what Dylan Holt had told him, and a report was made to USC's Title IX office.  Complaint ¶ 44.

Almost immediately Mr. Boermeester was banned from campus, classes, and all USC activities, including the USC football team, despite both he and Ms. Katz denying that any "intimate partner violence" had occurred.  Complaint ¶¶ 56, 62, 81.  The week prior to Mr. Boermeester's anticipated graduation date, on May 2, 2017, the Misconduct Sanctioning Panel met and accepted the investigator's findings and concluded an expulsion was warranted.  Complaint ¶ 111.  Both Mr. Boermeester and Ms. Katz submitted appeals, challenging the findings and seeking to overturn the findings and sanction.  Complaint ¶ 116.  However, on July 7, 2017, Defendant Dr. Ainsley Carry approved the findings of the Title IX investigator.  Complaint ¶ 118.

### B. Mr. Boermeester's Subsequent Litigation Against Defendants

On August 11, 2017, Mr. Boermeester filed a petition for a writ of administrative mandamus pursuant to Calif. Code Civ. Proc., § 1094.5 in the Superior Court of the State of California for the County of Los Angeles against USC and Dr. Ainsley Carry.  Complaint ¶ 124.  In his writ petition, Mr. Boermeester sought to reverse his expulsion on the grounds that USC failed to grant him a fair hearing, failed to proceed in the manner required by law, and committed a prejudicial abuse of discretion in that the decision was not supported by the evidence.  Complaint ¶ 125.

On March 21, 2018, the state trial court denied Mr. Boermeester's writ petition.  Complaint ¶ 126.  On June 14, 2018, Mr. Boermeester appealed the trial court decision on his writ petition to the Court of Appeal of California, Second Appellate District, Division Eight.  Complaint ¶ 127.

On March 21, 2019, Mr. Boermeester initiated the instant action against the Defendants, asserting causes of action for (1) Title IX—erroneous outcome, (2) Title IX—selective enforcement, (3) 14th Amendment procedural due process, (4) breach of contract, (5) promissory estoppel, (6) negligence, and (7) intentional infliction of

emotional distress.  Dkt. 1.

On April 17, 2019, Defendants filed their Motion to Dismiss Case Pursuant To FRCP 12(B)(6) Or, In The Alternative, Special Motion To Strike The Fourth, Fifth, Sixth, And Seventh Claims For Relief Pursuant To CCP § 425.16.  Dkt. 21.

On July 12, 2019, the Court denied Defendants' Motion and stayed this action pending the outcome of the state appellate court decision on Mr. Boermeester's writ petition, stating, "The Court finds that a stay is appropriate in this case given that the statute of limitations would otherwise bar Plaintiff from bringing this action, and because resolution of the state court proceeding concerning the Petition may have a substantial impact on this case."  Dkt. 38 at 2.

On May 28, 2020, in a divided opinion, the state appellate court ruled in favor of Mr. Boermeester and reversed the trial court's judgment on the writ petition. *Boermeester v. Carry*, 263 Cal.Rptr.3d 261 (2020).

On July 6, 2020, Respondents filed their petition for review of the appellate court decision on Mr. Boermeester's Writ Petition to the Supreme Court of California, and review was granted.

On July 31, 2023, the California Supreme Court reversed the appellate court judgment on the writ petition and remanded the matter to the state appellate court to decide several remaining issues.  *Boermeester v. Carry*, 15 Cal.5th 72 (2023).

On March 7, 2024, the state appellate court delivered its opinion on the issues that it previously expressly declined to reach and affirmed the trial court's denial of Mr. Boermeester's writ petition.  *Boermeester v. Carry*, 100 Cal.App.5th 383 (2024).

On July 8, 2024, this Court granted Mr. Boermeester's Motion to Lift Stay.

## C. The State Court Decisions Have Limited Bearing in This Litigation

The thrust of Defendants' Motion to Dismiss is that the findings in the state court mandamus litigation preclude the instant federal litigation.  However, the claims, evidence, and standard of review in the mandamus action differ considerably from the

instant litigation.  The inquiry in mandamus litigation is limited to: "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion" pursuant to California Code of Civil Procedure, §1094.5.  In the present litigation, Mr. Boermeester asserts causes of action for (1) Title IX—erroneous outcome, (2) Title IX—selective enforcement, (3) 14th Amendment procedural due process, (4) breach of contract, (5) promissory estoppel, (6) negligence, and (7) intentional infliction of emotional distress. Mr. Boermeester challenges the gender-biased nature of the proceedings (which was not considered by the state courts in the mandamus proceedings); the University's violations of its educational contract with Mr. Boermeester; Defendants' failure to act with due care in carrying out the investigative process; Defendants' failure to ensure confidentiality when issuing national press releases concerning Mr. Boermeester's circumstances and fate; and the intentional infliction on Mr. Boermeester of severe emotional distress given the circumstances.  The foregoing challenges to Defendants' actions are properly considered by the Court in this federal action and were neither raised nor resolved in the state court mandamus litigation.

Additionally, the inquiry in the mandamus litigation was limited to the written record prepared by USC that documented the administrative proceedings at USC.  Mr. Boermeester had no opportunity to obtain discovery or present witness testimony and extra-record evidence.  *Toyota of Visalia, Inc. v. New Motor Vehicle Bd.,* 188 Cal.App.3d 872, 881 (1997) ("[A] hearing on a writ of administrative mandamus is conducted solely on the record of the proceeding before the administrative agency.").  He could not present any factual evidence of USC's gender bias outside of the documents contained in the administrative record prepared by USC.

Moreover, the state courts reviewed the record and the parties' arguments under a highly deferential substantial evidence standard, in which all conflicts in the evidence were resolved in favor of USC:

> The substantial evidence standard of review is deferential. "'[W]e are

not free to indulge in an independent reconstruction of the events: our view of the record must be circumscribed by a limited appellate review of University proceedings.' We examine all relevant evidence in the administrative record and view that evidence in the light most favorable to the judgment, resolving all conflicts in the evidence and drawing all inferences in support of the judgment." (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1490.) "Only if no reasonable person could reach the conclusion reached by the administrative agency, based on the entire record before it, will a court conclude that the agency's findings are not supported by substantial evidence." (*Ibid*.)

*Boermeester v. Carry*, 100 Cal.App.5th 383, 394-395 (2024).

The evidence in this case has never been fully presented or reviewed independently or by a jury. The findings in the administrative proceedings rested entirely on the USC Title IX office's summaries of witnesses' purported statements to Defendant Gretchen Dahlinger Means and USC investigator Lauren Helsper, and the administrative findings served as the basis for the later state court findings. The state courts never heard testimony from Ms. Katz or Mr. Boermeester, nor from any other witnesses. The evidence that Mr. Boermeester will have the opportunity to present for the first time in this action, will show, among other things, that Mr. Boermeester was treated unfairly and discriminated against based on his gender by Defendants.

## III.  STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a Federal Rule of Civil Procedure, Rule 12(b)(6) motion to dismiss, the Court must apply a rigorous test and should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In applying this test, the Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the non-moving party. *Metzler Inv.*

*GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  Generally, the Court may look only to the pleadings and the attachments thereto.  *Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Dismissal of a claim is only appropriate if the plaintiff fails to set forth sufficient factual allegations that would, if true, entitle the plaintiff to relief.  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While conclusory allegations are not sufficient to avoid dismissal, the issue "is not whether plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to support the claims." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005), quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  In short, a complaint may not be dismissed if it "contain[s] sufficient factual matter ... to 'state a claim to relief that is plausible on its face' that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.    LEGAL ARGUMENT

### A. Success in the Mandamus Proceeding Was Not a Prerequisite to Recovery

No court has held that a student aggrieved by the results of a university disciplinary proceeding must pursue a petition for writ of mandate and succeed in having the decision overturned before the student may obtain civil damages.  Defendants argue that the denial of Mr. Boermeester's writ petition automatically bars his claims for damages; however, as expressly held by the Ninth Circuit, a student's suspension from university is the sort of "adjudicatory, quasi-judicial decision" subject to the judicial exhaustion requirement; thus, in California, "[a] party must exhaust judicial remedies by *filing* a § 1094.5 petition, the exclusive and 'established process for judicial review' of an agency decision." *Doe v. Regents of the University of California,* 891 F.3d 1147, 1155 (9th Cir. 2018), emphasis added.  There is no additional exhaustion requirement stating that a litigant must *succeed* in having the administrative decision overturned before he

---

may obtain civil damages.  See also *Doe v. Cal. Inst. of Tech.*, No. 18-09178, 2019 U.S. Dist. LEXIS 169672, 2019 WL 4238888, at *3 (C.D. Cal. Apr. 30, 2019) ("Plaintiff has exhausted his judicial remedies by asserting a cause of action under § 1094.5 in the FAC, and this Court maintains jurisdiction over Plaintiff's federal claims"); *Doe v. Cal. Inst. of Tech.*, No. 19-01005, 2019 U.S. Dist. LEXIS 230684, 2019 WL 8645652, at *7 (C.D. Cal. Aug. 13, 2019) (finding it was proper for a federal court to exercise supplemental jurisdiction over a § 1094.5 petition when plaintiff asserted a Title IX claim).

The case cited by Defendants in support of a purported "success" prerequisite is *Westlake Cmty. Hosp. v. Superior Court*, 17 Cal. 3d 465 (1976), in which the plaintiff physician challenged a hospital's revocation of staff privileges.  Recognizing the contractual relationship between the parties, the Court narrowly held, "whenever a hospital, pursuant to a quasi-judicial proceeding, reaches a decision to deny staff privileges, an aggrieved doctor must first succeed in setting aside the quasi-judicial decision in a mandamus action before he may institute a tort action for damages." *Westlake*, *supra*, 17 Cal. 3d at 469.  The facts of *Westlake* are distinguishable from Mr. Boermeester's situation because the lawsuit in *Westlake* was between a doctor and the hospital that conducted the peer review proceeding, and the results of that peer review proceeding were not challenged in a mandamus action.  Moreover, unlike the physician's complaint in *Westlake*, Mr. Boermeester alleges that he is a victim of a disciplinary system which, as practiced by Defendants, promulgates unfair and unequal treatment based on gender.

Likewise, Defendants cited *City of Fresno v. Superior Court*, 188 Cal. App. 3d 1484, 1489 (1987), where a Parks & Recreation employee's dismissal of his mandamus action barred his civil action for wrongful discharge, intentional interference with contractual relations, and intentional and negligent infliction of emotional distress.  In that case, exhaustion was required because the dismissal was the basis of the action.  Here, in contrast, the essence of Mr. Boermeester's complaint is the allegation that USC practices discrimination in the way it disciplines its students.  In other words, regardless

---

of whether Mr. Boermeester's dismissal from USC was technically free from defect under its rules and regulations, those standards are being applied in a manner which has a disparate adverse impact on accused male students, an issue that was not before the USC hearing officer or the state courts in this case. The Court should consider that legal authority interpreting the exhaustion doctrine in connection with similar civil rights cases are in agreement that the exhaustion doctrine does not apply to preclude litigants from pursuing civil claims for damages. See *Fahlen v. Sutter Central Valley Hospitals*, 58 Cal. 4th 655, 675-680 (2014); *Alborzi v. University of Southern California*, 55 Cal. App. 5th 155, 174-178 (2020).

Defendants also cited *Doe v. Regents of the Univ. of California*, 891 F.3d 1147 (9th Cir. 2018), in support of a purported "success" prerequisite, but that case does not mandate that a litigant must succeed in having the administrative decision overturned before he may obtain civil damages. In *Doe v. Regents*, the student plaintiff filed a petition for writ of mandate along with his other causes of action in federal court. The Court dismissed the student's writ petition on the grounds that the 11th Amendment barred the student from filing the state action in federal court. *Doe v. Regents*, *supra*, 891 F.3d at 1155. Because the student did not file a writ petition in state court, the Court also dismissed his claims under 42 U.S.C. § 1983, and his Title IX claims. Mr. Boermeester's situation is distinguishable, as he filed a petition for writ of mandate in state court.

Further, in arguing for the extension of *Westlake*, *Doe v. Regents*, and *City of Fresno* to the present matter against a private university, Defendants misconstrue the purpose and intent of the Courts' holdings. The referenced line of case law is generally premised on the fact that the entity which performed the quasi-judicial proceeding at issue is a public or governmental organization. As public entities, they are entitled to certain presumptions about the fairness and inherent reliability of their disciplinary procedures. The medical industry is governed by comprehensive statutory and regulatory schemes, which afford a great deal of transparency in disciplinary matters. This level of transparency simply does not exist in the student conduct context at private and public

universities.  Thus, when the entity performing the investigation is a private corporation, as in the instant matter, presumptions of fairness and reliability do not apply.  See *Westlake*, *supra*, 17 Cal.3d at p. 484 ("quasi-judicial decision reached by a tribunal of a private association may not be entitled to exactly the same measure of respect as a similar decision of a duly constituted public agency").  This distinction is significant in determining the scope of the mandamus requirement in the student disciplinary context.

A ruling that a student is barred from bringing claims for damages against a university to redress discrimination and unfair treatment unless the student can first overturn the administrative decision in a mandamus action would lead to disastrous results for students wronged by their education institutions.  The purpose of a university disciplinary proceeding is to determine whether misconduct occurred, not redress the student's claims of discrimination and unfair treatment.  The university disciplinary proceeding itself is limited to an investigation in which witness interviews are not audio or video recorded (so there is no accurate transcription of what witnesses actually said) and a hearing where there is no right of cross-examination or direct examination of witnesses, where the rules of evidence do not apply, where there is often no transcript of the hearing proceedings, and in this case, where the investigation, factfinding, and decision making roles were all undertaken by the same individuals who initiated the proceedings against Mr. Boermeester in the first place.  Mr. Boermeester asserts here that the university proceeding was the very means of discriminatory and unfair treatment.  By concluding on limited mandamus review that the university complied with the most minimal requisites of a fair process, and that administrative evidence of the student's misconduct was sufficient to support the university's decision under a deferential substantial evidence standard, the mandamus court could thus entirely and permanently foreclose the student's statutory right to litigate, in court, the student's distinct claim that discrimination and other unfair treatment was the reason for the exclusionary effort.

As California's high court accurately noted, given the limited record reviewed by the state court in a mandamus proceeding, and the high degree of deference accorded to

the agency's decision it is "very difficult for a complaining [litigant] to have the board's adverse factual findings overturned. Therefore, in nearly every case, an adverse decision from the board would leave the [litigant] without the benefit of the damages remedy . . .." *State Bd. of Chiropractic Exam'rs v. Superior Court*, 45 Cal. 4th 963, 977 (2009). A decree that a student must first succeed in having the university's adverse findings set aside before he or she may proceed with a court action for damages under state and federal law undermines the purpose of protecting students by assuring them the procedural guarantees and independent factfinding of a damages action.

### B. The California Supreme Court and Court of Appeal Rulings Do Not Preclude Mr. Boermeester from Establishing an Essential Element of Each of His Claims, and Mr. Boermeester Has Pleaded All Necessary Elements of His Claims

Defendants argue that Mr. Boermeester's claims are barred by issue preclusion and collateral estoppel. Collateral estoppel bars "relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." *People v. Carter*, 36 Cal. 4th 1215, 1240 (2005) (alterations in original) (internal quotation marks omitted). "[O]nly issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine." Id., citation omitted. "An issue is actually litigated [w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." Id., quoting *People v. Sims*, 32 Cal. 3d 468, 484 (1982) (internal quotation marks omitted). Defendants do not cite any legal authority in which a student's civil claims were barred because the issues had already been litigated in a mandamus action. Issue preclusion and collateral estoppel do not apply in this case because none of the issues were previously decided in the mandamus action. Applying issue preclusion would effectively deny Mr. Boermeester (and Ms. Katz) any remedy

against the harm and mistreatment inflicted on them by USC.

Defendants also argue that Mr. Boermeester's third through seventh causes of action should be dismissed for failure to state a claim. However, Federal Rule of Civil Procedure, Rule 8, requires only "a short plain statement showing that the pleader is entitled to relief," it does not require Mr. Boermeester to definitively prove his case before the case has even begun. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). In fact, "[a]ll pleadings shall be so construed as to do substantial justice." Federal Rule of Civil Procedure, Rule 8(e). Mr. Boermeester's causes of action cannot be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Swierkiewicz*, *supra*, 534 U.S. at 514. Dismissal is not appropriate.

### 1. *Issue Preclusion Does Not Bar Mr. Boermeester's First and Second Causes of Action Under Title IX*

California's Supreme Court has ruled that "a court may not give preclusive effect to the decision in a prior proceeding if doing so is contrary to the intent of the legislative body that established the proceeding in which res judicata or collateral estoppel is urged." *Wabakken v. Cal. Dep't of Corr. & Rehab.*, 801 F.3d 1143, 1148 (9th Cir. 2015), quoting *State Bd. of Chiropractic Exam'rs*, *supra*, 45 Cal. 4th at 976 (citations omitted). Title IX provides for a private right of action against discrimination on the basis of sex in any education program or activity that receives Federal financial assistance. *Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979) ("We have no doubt that Congress intended to create Title IX remedies comparable to those available under Title VI and that it understood Title VI as authorizing an implied private cause of action for victims of the prohibited discrimination.") Title IX does not expressly or impliedly condition the right to be free from discrimination on the basis of sex on a prior successful mandamus challenge to a university's quasi-judicial decision to dismiss the student from the university.

Indeed, Title IX leaves no room for a requirement of judicial exhaustion. As

1    discussed above, giving USC's adverse decision preclusive effect would unduly restrict

2    students' civil remedies under Title IX, which is contrary to legislative intent.  Writ

3    review gives substantial deference to the university's findings.  *State Bd. of Chiropractic*

4    *Exam'rs*, *supra*, 45 Cal. 4th at 977.  Requiring a student to overturn USC's adverse

5    decision by writ before bringing a civil action would mean that "in nearly every case, an

6    adverse decision from [USC] would leave the [student] without the benefit of the

7    damages remedy set forth in [Title IX]."  Id.  Nothing in Title IX suggests that the

8    Legislature intended the damages remedy created in that provision to be so narrowly

9    circumscribed, and such a narrow interpretation of the damages remedy would hardly

10   serve the Legislature's purpose of protecting the rights of students to be free from

11   discrimination on the basis of sex.

12        Additionally, Title IX discrimination issues alleged in this action were neither

13   raised nor litigated in the state court proceedings.  Title IX of the Education Amendments

14   of 1972 states that "[n]o person . . . shall, on the basis of sex, be excluded from

15   participation in, be denied the benefits of, or be subjected to discrimination under any

16   education program or activity receiving [f]ederal financial assistance[.]"  20 U.S.C. §

17   1681(a).  "Because Title IX prohibits . . . subjecting a person to discrimination on

18   account of sex, it is understood to bar the imposition of university discipline [when sex]

19   is a motivating factor in the decision to discipline."  *Doe v. Columbia Univ.*, 831 F.3d 46,

20   53 (2d Cir. 2016) (internal quotation marks, alteration, and citation omitted).  It is

21   undisputed that USC receives federal financial assistance under Title IX and that, by

22   expelling Mr. Boermeester, it "excluded [him] from participation in [or] denied [him] the

23   benefits of . . . [an] education program."  See 20 U.S.C. § 1681(a).  The applicable

24   pleading standard for a Title IX claim against a university is "whether 'the alleged facts,

25   if true, raise a plausible inference that the university discriminated [against the plaintiff]

26   'on the basis of sex'[]."  *Doe v. Regents of the Univ. of Cal.*, 23 F.4th 930, 935 (9th Cir.

27   2022), quoting *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 947 (9th Cir. 2020). The

28   state courts did not consider or opine on whether USC discriminated against Mr.

Boermeester on the basis of his sex.  See *Boermeester v. Carry,* 15 Cal.5th 72, 94-95 (2023); *Boermeester v. Carry*, 100 Cal. App. 5th 383, 397 (2024).

Mr. Boermeester's Complaint in this action plausibly alleges that there were significant flaws in the disciplinary proceeding, which cast doubt on the outcome of the University's proceeding as a whole, and that the finding of responsibility and the decision to expel Plaintiff was motivated by gender bias.  When combined, allegations of external pressures, an internal pattern and practice of bias, and specific instances of bias "raise a plausible inference of discrimination on the basis of sex sufficient to withstand dismissal at this stage."  *Doe v. Regents*, *supra*, 23 F.4th at 935.  As "smoking gun" proof of discrimination is rare, circumstantial evidence may satisfy the *McDonnell Douglas* test*.*  (*See Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) ("Absent direct evidence of discrimination, a Title VII plaintiff may prove his case through circumstantial evidence, following the burden-shifting framework established in *McDonnell Douglas Corp*…"); *DeJung v. Superior Court,* 169 Cal.App.4th 533, 552 (2008).  A plaintiff may cast articulable doubt on the outcome of university sexual misconduct proceedings by, *inter alia*: pointing to procedural flaws in the adjudication processes; noting inconsistencies or errors in the adjudicator's oral or written findings; or challenging the overall sufficiency and reliability of evidence.  See *Doe v. Marymount Univ.* 297 F.Supp.3d 573, 584 (E.D. Va. Mar. 14, 2018); see also *Yusuf v. Vassar Coll.,* 35 F.3d 709, 715 (2d Cir. 1994).  A university's denial of the opportunity for cross-examination before the factfinder in a case where credibility is at stake is also a fact sufficient to cast articulable doubt on the accuracy of the outcome.  *Doe v. Baum,* 903 F.3d 575, 585-586 (6th Cir. 2018).  Mr. Boermeester's Complaint details how USC's proceeding against Mr. Boermeester was predicated on unlawful gender stereotypes and motivated by a desire to demonstrate publicly the University's harsh stance against alleged male perpetrators of sexual misconduct.  See Complaint ¶¶ 1-17, 129-155, 171.

There is no specific formulation through which to adequately plead gender bias, pre-discovery, in an intentional discrimination case.  Instead, gender bias may be proven

*inter alia* through the statements of members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that tend to show the influence of gender.[1]  *Yusuf*, *supra*, 35 F.3d at 715; see also *Doe v. Miami Univ.,* 882 F.3d 579, 592-93 (6th Cir. 2017).  Gender bias may also be inferred where an adjudicator possesses "outdated and discriminatory views of gender and sexuality."  *Doe v. Marymount*, *supra*, 297 F.Supp.3d at 586.  Moreover, "[w]here the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side," it may be inferred that the evaluator has been influenced by bias. *Doe v. Columbia Univ.,* 831 F.3d 46, 57 (2nd Cir. 2016.)

Courts around the country have recognized that evidence of external pressures on a university to aggressively handle sexual misconduct cases is one factor that may demonstrate gender biased decision-making.  Specifically, evidence that a university has been placed under federal investigation, criticized for its failure to protect female sexual assault victims, or is under pressure to correct its perceived tolerance of the sexual assault of female students provides a "backdrop that, when combined with other circumstantial evidence of bias in [plaintiff's] specific proceeding, gives rise to a plausible claim [of bias]."  *Doe v. Baum*, *supra*, 903 F.3d at 586; see also *Neal v. Colo. State University-Pueblo,* No. 16-cv-873, 2017 WL 633045, *12 (D. Colo. Feb. 16, 2017) (allegations that university under OCR pressure to enforce "Dear Colleague Letter" in a gender-skewed manner sufficient to plead gender bias); *Doe v. Miami*, *supra*, 882 F.3d at 592-93 (plausible inference of gender bias where inter alia university faced pressure to zealously "prosecute" male respondents after facing lawsuit by female student); *Doe v. Columbia*, *supra*, 831 F.3d at 58 (gender bias inferred where university was motivated to accept female accusation of sexual assault and reject male's claim of consent to avoid further

---

[1] Discovery is required to determine whether a university has engaged in a pattern of decision making that tends to show the influence of gender.  Universities, including USC, do not publish statistics concerning the outcomes of sexual misconduct proceedings or the gender of those students who have been found responsible and sanctioned.

public criticism that it did not protect female students).

In his Complaint, Mr. Boermeester details numerous sources of external pressure imposed on USC which impacted the finding in his case. First, it is no secret that universities, including USC, have been under tremendous pressure since the issuance of the 2011 Dear Colleague Letter to aggressively prosecute males accused of misconduct. Complaint ¶ 172). As a recipient of approximately $500 million annually in federal funding, USC acted to ensure compliance with federal guidance, and avoid potential de-funding penalties. Complaint, ¶ 172. Second, while Mr. Boermeester's case was ongoing, USC was under investigation by OCR for complaints related to its alleged mishandling of sexual misconduct cases. Complaint, ¶¶ 182-184. The first was filed by the Student Coalition Against Rape on behalf of students and staff members in May 2013. The second was filed in March 2016 by an individual with similar allegations.[2] Complaint ¶¶ 183-184. These complaints garnered publicity and media attention and ultimately resulted in a Voluntary Resolution Agreement on March 12, 2018. Complaint ¶ 186. The Complaint points out that the initiation of the OCR investigations perpetuated an anti-male atmosphere at USC where male students are treated as perpetrators who must be disciplined. Complaint ¶ 189.

Moreover, Dahlinger Means herself was the subject of considerable criticism, both internally within USC, and from the national media since arriving at USC in January 2016. Complaint ¶ 140. In a Los Angeles Superior Court decision post-dating the Superior Court decision on Mr. Boermeester's Petition, Judge Elizabeth Allen White ordered USC to vacate its disciplinary findings against a student when she found that statements made by Dahlinger Means demonstrated "an unacceptable probability of actual bias in the manner in which the hearing was conducted" and concluded Dahlinger Means "held an adversarial position in relation to Petitioner, rendering her advisory role…improper." *Doe v. Ainsley Carry, et al.*, Case No. BS163736 (June 28, 2018). This

---

[2] USC was also the center of a maelstrom of credible allegations regarding its retention of doctors *with known, documented histories of sexual abuse of students.*

finding stemmed from Dahlinger Means' acknowledgement that she referred to the
accused male student and his advisor as "motherfuckers", questioning "Who do those
motherfuckers think they are?" and "Does that college motherfucker know who I am?"
while describing the female complainant as "cute" and "a catch".  While Defendants seek
to distinguish the findings related to Dahlinger Means' demonstrated bias from her
actions in Mr. Boermeester's case, Judge White astutely noted the impact such findings
would have on future cases brought against USC by similarly situated individuals,
declaring "such institutional bias exists, which will confer a benefit upon the class of
persons at USC accused of violating USC's sexual misconduct policy where a Title IX
investigation is conducted."  Complaint ¶¶ 141-144.  Further actions taken by Dahlinger
Means in this matter, as discussed in detail below, reveal her gender biased approach was
not limited to the *Doe v. Ainsley Carry* matter.  The foregoing examples of the external
pressures placed on USC in general, and on Dahlinger Means in particular during Mr.
Boermeester's case, is sufficient to raise a plausible inference of gender bias.

Defendants' suggestion that allegations made about football players (as opposed to
all men in general) do not suggest gender bias is nonsensical and ignores reality—the
majority of football players are male, and indeed all football players at USC are male.
During Ms. Katz's first coerced meeting with Dahlinger Means and Helsper on January
23, 2017, Dahlinger Means referenced Baylor University's prior mishandling of sexual
assault allegations against members of its football team, stating something to the effect of
"We know how to handle football players."[3]  Complaint ¶ 52.  Against the express wishes
of Ms. Katz, USC then opened an investigation into the allegations made by a third-party,
non-witness reporter, against Mr. Boermeester, informed by archaic stereotypes that male

---

[3] This reference alludes to the report of a former Baylor volleyball player who alleged the
University mishandled her complaint of having been gang-raped by up to eight Baylor
football players in 2012. *See* http://www.espn.com/college-
football/story/_/id/24090683/baylor-university-settles-title-ix-lawsuit-which-gang-rape-
8-football-players-was-alleged

athletes are aggressive, violent and hypermasculine.  Complaint ¶¶ 131-132.  For instance, at the beginning of Mr. Boermeester's first and only meeting with USC's Title IX Office on January 30, 2017, Helsper referred to Mr. Boermeester as an "all-star football player."  Complaint ¶ 77.  Dr. Carry also cited Mr. Boermeester's "high profile" status as a football player, as a factor justifying the expulsion, a sanction that the appellate panel had soundly rejected as grossly disproportionate in its decision letter dated July 7, 2017.  Complaint ¶ 120.  The mere fact that Mr. Boermeester's status as a football player was mentioned both during Mr. Boermeester's first meeting, and in the expulsion decision, notwithstanding its irrelevance to either the allegations made or the applicable procedures, reveals the impact of gender on the investigation and the investigators' handling of the investigation from the outset.

Furthermore, USC chose to make an example of Mr. Boermeester, by demonstrating publicly USC's harsh stance against male students accused of misconduct.  Complaint ¶ 156.  Specifically, despite the policies' confidentiality provisions, on February 7, 2017, the existence of an investigation against Mr. Boermeester was leaked to the national media.  USC issued a press release in response, publicly declaring Mr. Boermeester had been removed from the USC football team and had been indefinitely suspended during the investigation.  Complaint ¶ 97.  Similarly, in direct violation of its obligations with respect to Mr. Boermeester's privacy and confidentiality in the Title IX process, USC publicly announced shortly after Dr. Carry's July 7, 2017 expulsion decision: "Placekicker Matt Boermeester, whose 18 field goals last year—including a 46-yarder at the gun to win the Rose Bowl—were 1 shy of the school record, won't return because of a student code of conduct issue."  Complaint ¶ 121.  The initial public statement was made while two OCR cases were pending against USC and during a national dialogue about campus sexual assault.  USC conducted its prosecution of Mr. Boermeester and imposed the harshest sanction possible to demonstrate an exacting stance against males accused of misconduct, alerting the public in a national press release to its ultimate decision five months later.  Complaint, ¶ 121

---

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Mr. Boermeester further demonstrates the plausibility of his gender bias claims in articulating how USC treated the female student, Ms. Katz, as a battered victim who required the University's protection, despite Ms. Katz's repeated statements that she had not been subjected to any misconduct, and despite her repeated requests that the investigation not move forward.  Complaint ¶ 123.  From the outset, Mr. Boermeester was treated as a perpetrator, while Ms. Katz was mischaracterized as a traumatized "battered woman."  Complaint ¶ 14.  Utilizing a trauma-informed investigative approach, Dahlinger Means presumed Ms. Katz to be a victim whose denials of Mr. Boermeester's wrongdoing were a response to the trauma she suffered.  Complaint ¶¶ 73, 136.  Both Mr. Boermeester and Ms. Katz were subjected to stereotypical gender norms based on archaic presumptions about the roles of men and women in relationships.  Complaint ¶ 14.

Given the external and internal pressures on USC to aggressively discipline male students, specific discriminatory statements and presumptions made about male athletes, and the procedural errors made including reaching an erroneous conclusion that was contrary to the weight of evidence, Plaintiff has articulated "some minimal evidence suggesting an inference that [Defendants] acted with discriminatory motivation," giving rise to a plausible inference that the Defendants' actions were the result of gender bias. *Doe v. Columbia*, *supra*, 831 F.3d at 54.  Plaintiff has presented a *prima facie* showing of a Title IX violation.  None of these issues were raised or decided in the mandamus litigation, so Mr. Boermeester's first and second causes of action are not barred by collateral estoppel or issue preclusion.

    2.    ***Issue Preclusion Does Not Bar Mr. Boermeester's Third Cause of Action Under 42 U.S.C. § 1983, and USC Is Engaged in State Action***

Defendants argue for dismissal of Plaintiff's 42 U.S.C. § 1983 claim on the grounds that the California Supreme Court stated in dicta that USC did not engage in state action.  *Boermeester v. Carry*, 15 Cal.5th 72, 87 (2023).  This issue was not actually litigated in the state court matter.  It was not raised, submitted for determination, or

actually determined by the state court.  "Whether a private party engaged in state action is a highly factual question."  *Heineke v. Santa Clara Univ.*, No. 17-CV-05285-LHK, 2017 WL 6026248, at *15 (N.D. Cal. Dec. 5, 2017).  In his Complaint, Mr. Boermeester details how the actions of the Defendants in adjudicating Mr. Boermeester's case transformed their conduct into state action.  Beyond the mere receipt of state and federal funding, or the general statements made by Secretary DeVos about the coercive nature of the Dear Colleague Letter, USC acted in direct response to the federal government's threat that colleges refusing to comply with the mandates of the DCL would be found in violation of Title IX and subject to de-funding penalties.  Complaint ¶ 216.  In addition, Mr. Boermeester plausibly alleges state action pursuant to the "public function" test, when USC adjudicated an allegation of intimate partner violence, a function that is traditionally governmental in nature and delegated to the State.  Complaint ¶ 214.  None of this information was raised or considered by the state court, as it was not relevant to deciding Mr. Boermeester's writ petition pursuant to Code of Civil Procedure § 1094.5.

Significantly, in arguing for dismissal of Plaintiff's federal claims on exhaustion grounds, Defendants seek to take advantage of the state statutory procedure requiring Mr. Boermeester to file a writ of mandamus in Superior Court before commencing a federal action.  Yet, Defendants seek to avoid "state actor" status pursuant to 42 U.S.C. §1983 in carrying out its internal disciplinary procedures.  Defendants cannot have it both ways.  Should Defendants seek the benefit of a state court proceeding (to delay or secure dismissal of a plaintiff's federal clam), it cannot simultaneously deprive Plaintiff of the procedures mandated by the state courts in carrying out its grievance process.  In requiring Mr. Boermeester to pursue a state court remedy of a writ of mandate, and seeking to enforce the Superior Court's decision on Mr. Boermeester's writ petition, Defendants are transformed into "state actors" who were thus required to provide the requisite level of procedural due process protections in a university student conduct proceedings.

### 3. *Issue Preclusion Does Not Bar Mr. Boermeester's Fourth Cause of Action for Breach of Contract or Fifth Cause of Action for Promissory Estoppel, and Mr. Boermeester Has Pleaded All Elements of Both Causes of Action*

Defendants argue that Mr. Boermeester's breach of contract claims were already litigated and decided, but this is clearly untrue.  The elements of a breach of contract claim are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 921 (2013).  Mr. Boermeester alleges in his fourth cause of action against USC that a contractual relationship existed between him and USC through the act of matriculation and payment of tuition and fees, and through written documents and policies provided to students (Complaint ¶¶ 253-260); Mr. Boermeester performed his obligations under the contract (Complaint ¶ 256); USC committed multiple breaches of its agreements with Mr. Boermeester during the investigation and adjudication process by failing to abide by university procedures, including by predicating its actions toward Mr. Boermeester on unlawful gender stereotypes (Complaint ¶¶ 260-263); and Mr. Boermeester sustained damage as a result of USC's breaches.  Complaint ¶¶ 264-265.  These identical issues were neither adjudicated nor rejected by the state court in connection with the writ petition.  They are not barred by issue preclusion or collateral estoppel.

Defendants further argue that despite being expelled from USC following a proceeding in which he was treated unfairly and unequally, Mr. Boermeester "cannot establish that he was injured by any purported reliance on promises made by USC."  Au contraire.  The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."  *US Ecology, Inc. v. State of California*, 129 Cal.App.4th 887, 901 (2005).  Plaintiff alleges in his fifth cause of action against USC that USC's policies and offer of admission constitute representations and promises that

USC should have reasonably expected to induce action or forbearance by Mr. Boermeester (Complaint ℙ 267); Mr. Boermeester relied to his detriment on USC's promises and representations, including "its express and implied promises that USC would not discriminate against Mr. Boermeester and would not deny him his procedural rights should he be investigated for an alleged violation of the University's policies" (Complaint ℙℙ 268-269); USC expected or should have reasonably and foreseeably expected Mr. Boermeester to rely on its promises that USC would not discriminate against him or deny him procedural rights (Complaint ℙ 268); and Mr. Boermeester sustained damages  as a result of his reliance.  Complaint ℙ 271.  The state courts did not consider whether USC discriminated against Mr. Boermeester on the basis of sex, nor whether policies and procedures were applied to him unequally and in a discriminatory manner on the basis of his gender.  Therefore, Mr. Boermeester's fifth cause of action is not barred by issue preclusion or collateral estoppel.

Defendants also contend that Mr. Boermeester's claims for breach of contract and promissory estoppel fail because Plaintiff failed to identify specific contractual promises that USC breached.  Whether an agreement exists is "a question of fact."  *Kashmiri v. Regents of University of California*, 156 Cal. App. 4th 809, 829 (2007).  To determine whether a contract exists, the Court "must give effect to the mutual intention of the parties as it existed at the time the contract was" entered into.  Id. at 831.  The reasonableness of Mr. Boermeester's "expectation is measured by the definiteness, specificity, or explicit nature of the representation at issue."  Id. at 832.  In his Complaint, Mr. Boermeester identified that policies at issue (Complaint ¶ 63 ["the SCampus Handbook 2016-2017 (the "Handbook") and the Policy and Procedures on Student Sexual, Interpersonal, and Protected Class Misconduct ("Misconduct Policy")]) and set forth specific and definite promises made by the University on which he relied, and which the University breached, including: that USC would not impose an interim suspension on him in the absence of reliable evidence; that USC would not presume Mr. Boermeester guilty from the outset; that USC would afford Mr. Boermeester equal

treatment; that USC would respect Mr. Boermeester's right to an advisor; that USC would not misrepresent or fabricate evidence; that USC would only find a policy violation if all elements of the violation were established; and that USC's decision would be based on relevant, reliable evidence evaluated under a preponderance of evidence standard. (Complaint ¶ 261.) Mr. Boermeester has pleaded all elements of causes of action for breach of contract and promissory estoppel.

### 4. *Issue Preclusion Does Not Bar Mr. Boermeester's Sixth Cause of Action for Negligence, and Mr. Boermeester Has Pleaded all Necessary Elements of a Negligence Claim*

"In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages." *Conroy v. Regents of University of California*, 45 Cal.4th 1244, 1250 (2009). Mr. Boermeester alleges in his sixth cause of action that a special university-student relationship existed between him and Defendants, giving rise to "a duty to conduct the disciplinary process with due care, to perform an investigation free from bias or conflict, and to ensure proper training to those responsible for investigating and adjudicating the alleged policy violations" (Complaint, ¶¶ 275-277); Defendants breached their duties by failing to provide the full protections of the disciplinary process and subjecting Mr. Boermeester to a biased and defective procedure, and USC further breached the duty by failing to remedy Defendant Dahlinger Means' known bias (Complaint, ¶¶ 278-279); and Mr. Boermeester suffered injuries as a direct result of Defendants' breaches. Complaint, ¶ 280. This cause of action arises from Defendants' breaches of duties in conducting disciplinary proceedings with due care, free of gender bias, which was not raised or considered in the mandamus proceedings. Mr. Boermeester was not afforded any opportunity for discovery or to present extra-record evidence of gender bias in the mandamus proceedings. Therefore, this issue was not actually litigated in the mandamus action. Mr. Boermeester's sixth cause of action is not barred by issue preclusion or collateral estoppel.

Defendants argue that USC did not owe Mr. Boermeester a duty of care. However, there can be no dispute that Defendants owed Mr. Boermeester a duty to act with

---

reasonable care.  Calif. Civ. Code, § 1714, subd. (a).  University students have the inalienable right to attend campuses which are safe, secure and peaceful.  Cal. Const., art. I, § 28, subd. (f)(1).  In the university context, given the special relationship between universities and students, the California Supreme Court has extended the duty of care that a university must provide to its students to include a limited duty of care to protect students from foreseeable harm by third parties.  *Regents of University of California v. Superior Court*, 4 Cal. 5th 607, 624-625 (2018).  As Mr. Boermeester alleged, Defendants had a duty to conduct the disciplinary process with due care, to perform an investigation free from gender bias or conflict, and to ensure proper training to those responsible for investigating and adjudicating the alleged policy violations.  Complaint ¶ 276.  This includes a duty to "avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences."  *Goss v. Lopez*, 419 U.S. 565, 579 (1975).  Mr. Boermeester has pleaded all elements of a cause of action for negligence.

### 5. *Issue Preclusion Does Not Bar Mr. Boermeester's Seventh Cause of Action for IIED, and Mr. Boermeester Has Pleaded all Necessary Elements of an IIED Claim*

"A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'"  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).  Whether Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress, and whether Mr. Boermeester suffered emotional distress as a result of Defendants' conduct, was not litigated in the mandamus action, thus Mr. Boermeester's seventh cause of action is not barred.

Mr. Boermeester has pleaded all necessary elements of an IIED claim.  Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court.  *Godfrey v. Steinpress*, 128 Cal. App. 3d 154,

173 (1982).  If reasonable people may disagree, then it is for the jury to determine whether the conduct was outrageous.  *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499 (1970).  Mr. Boermeester alleges in his seventh cause of action that USC's Title IX office itself initiated a complaint against Mr. Boermeester, treating the "reporting party" Ms. Katz as a "battered" woman despite her repeated denials of misconduct, and fabricating and misrepresenting evidence to reach their predetermined conclusion that Mr. Boermeester was responsible for a violation of USC's policies and deserved the most severe form of punishment, an expulsion.  Complaint ¶ 4.  Mr. Boermeester alleged that Defendants used intimidation tactics and threats of adverse institutional action to continuously interfere with, and insert themselves into, the private, consensual, adult relationship between Mr. Boermeester and Ms. Katz.  Complaint ¶ 5.  Defendants publicly shamed Mr. Boermeester by removing him from campus and leaking information to the media that Mr. Boermeester had been removed from the USC football team and had been indefinitely suspended, and then publicly announcing his expulsion from USC to further humiliate and permanently damage Mr. Boermeester's good name, reputation, access to education, and career.  Complaint ¶ 283.  Finally, USC expelled Mr. Boermeester from USC during his last semester for engaging in "intimate partner violence" despite knowing that no violence of any sort had occurred and on the basis of his gender, an act that has precluded Mr. Boermeester from obtaining his undergraduate degree, and which effectively derailed his aspirations to play football in the NFL. Complaint ¶ 17.  Given Mr. Boermeester's "particularly vulnerable relationship vis-a-vis the university," any reasonable person would find that Defendants' mistreatment of Mr. Boermeester was outrageous.  See *Russell v. Salve Regina Coll.*, 649 F. Supp. 391, 402 (D.R.I. 1986).

Mr. Boermeester further alleges that he has suffered severe and extreme emotional distress, including "anxiety, stress, depression, hopelessness, headaches, insomnia, weight loss, loss of appetite, humiliation, reputational damages, and mental anguish," and Defendants' actions were the actual and proximate cause of his distress.  Complaint ¶¶

286-287.

### C. Leave to Amend Should Be Granted if the Court Determines that Mr. Boermeester Has Failed to State a Claim

Should the Court find that any of Mr. Boermeester's causes of action fails to state a claim, Mr. Boermeester should be granted leave to amend.  Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The purpose of this Rule is to ensure that decisions are made "on the merits rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  If the Court finds that the Complaint does not state a claim with sufficient clarity or specificity, Mr. Boermeester should have the opportunity to amend his Complaint.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.


DATED:   August 8, 2024                      Respectfully submitted,


                                             By:   /S/ Mark M. Hathaway            .
                                             HATHAWAY PARKER
                                             Mark M. Hathaway, Esq.
                                             Jenna E. Parker, Esq.

                                             NESENOFF & MILTENBERG LLP
                                             Andrew T. Miltenberg, Esq.
                                             Stuart Bernstein, Esq.
                                             Tara J. Davis, Esq.

                                             *Attorneys for Matthew Boermeester*