Name  Mark M. Hathaway (SBN 151332)
Address  515 S. Flower St 18th Floor
City, State, Zip  Los Angeles, CA 90071
Phone  213-529-9000
Fax  213-529-0783
E-Mail  mark@hathawayparker.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW BOERMEESTER<br><br>PLAINTIFF(S),<br>v.<br>UNIVERSITY OF SOUTHERN CALIFORNIA, et.al.<br><br>DEFENDANT(S). | CASE NUMBER:<br>2:19-cv-02137<br><br>NOTICE OF APPEAL |

NOTICE IS HEREBY GIVEN that _____Matthew Boermeester_____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:


☐ Bail status:

**Civil Matter**

☒ Order (specify):
    Order to Dismiss

☐ Judgment (specify):


☐ Other (specify):


Imposed or Filed on ___March 10, 2025___. Entered on the docket in this action on __March 10, 2025__.

A copy of said judgment or order is attached hereto.

| | |
|---|---|
| April 7, 2025 | /s/ Mark Hathaway |
| Date | Signature |
| | ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk |

Note:   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW BOERMEESTER, | Case No. CV 19-2137 FMO (MBKx) |
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANTS' MOTION TO DISMISS** |
| UNIVERSITY OF SOUTHERN CALIFORNIA, et al., | |
| Defendants. | |

Having reviewed and considered all the briefing filed with respect to Dr. Ainsley Carry ("Carry"), Gretchen Dahlinger Means ("Dahlinger Means"), and the University of Southern California's ("USC") (collectively, "defendants") Motion to Dismiss (Dkt. 78, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND[1]

The case arises out of Matthew Boermeester's ("plaintiff") expulsion from USC following a Title IX investigation into an incident of intimate partner violence. (See Dkt. 1, Compl. at ¶¶ 34,

---

[1] Because the parties are familiar with the facts and allegations of this case, the court will discuss them only as necessary. Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

41-62 & 74-122).  The Title IX office concluded that plaintiff violated USC's policy on intimate partner violence, and a sanctioning panel concluded expulsion was warranted.  (See id. at ¶¶ 104 & 111).  These findings were reviewed by an appellate panel, and ultimately by USC's then-Vice President of Student Affairs, Carry, who accepted the findings and upheld the sanction.  (See id. at ¶¶ 116-18).

Plaintiff then filed a Verified Petition for Writ of Mandamus ("Petition") in state court on August 11, 2017, (see Dkts. 78-5 & 78-6, Petition), seeking to reverse his expulsion.  (See Dkt. 1, Compl. at ¶¶ 124-26).  His Petition was denied by the trial court.  (See id. at ¶ 126); (Dkt. 78-7, Order Denying the Petition for a Writ of Mandate at 22).[2]  Plaintiff appealed up to the California Supreme Court, which held that USC provided a fair process and was not required to have conducted a live hearing with cross-examination during its Title IX investigation into the incident. See Boermeester v. Carry, 15 Cal.5th 72, 97-98 (2023), cert. denied, 144 S.Ct. 497 (2023).  The Court also suggested there was sufficient evidence for USC to have found a violation of its policy. Id. at 97 ("Because intent was irrelevant under USC's policy against intimate partner violence, USC could have based its decision to expel Boermeester exclusively on Roe's initial statement, the video consistent with that statement, and Boermeester's own admissions – all of which tended to show that Boermeester caused Roe physical harm.").  On remand, the California Court of Appeal affirmed the denial of plaintiff's Petition, finding that substantial evidence supported USC's decision and that the adjudicatory process was fair. See Boermeester v. Carry, 100 Cal.App.5th 383, 387 (2024) ("We find substantial evidence supports USC's decision and find no denial of fair

---

[2] Defendants request that the court take judicial notice of certain documents in the related state case.  (See Dkt. 78-4, Request for Judicial Notice In Support of Defendants' Motion to Dismiss at 2).  Pursuant to Fed. R. Evid. 201, the court takes judicial notice of the Los Angeles County Superior Court's decision and related matters in Matthew Boermeester v. Ainsley Carry, et al., Los Angeles Superior Court, Case No. BS170473.  See Rosales-Martinez v. Palmer, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well established that we may take judicial notice of judicial proceedings in other courts."); Trigueros v. Adams, 658 F.3d 983, 987 (9th Cir. 2011) (The court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" (citations omitted)).

process in USC's use of an investigator-adjudicator or in its appeals process, either structurally or as conducted in this case. We affirm the denial of the writ.").

While the state action was pending, plaintiff filed the instant action asserting the following claims: (1) erroneous outcome and selective enforcement under Title IX, 20 U.S.C. § 1681, et seq., against USC, (see Dkt. 1, Compl. at ¶¶ 157-205); (2) violation of due process under the Fourteenth Amendment against all defendants, (see id. at ¶¶ 206-51); (3) breach of contract against USC, (see id. at ¶¶ 252-65); (4) promissory estoppel against USC, (see id. at ¶¶ 266-72); (5) negligence against all defendants, (see id. at ¶¶ 237-81); and (6) intentional infliction of emotional distress against all defendants. (See id. at ¶¶ 282-88). Plaintiff seeks damages and injunctive relief, as well as attorney's fees and costs. (See id. at ¶¶ 195-96 & 251).

This court previously denied defendants initial motion to dismiss, (see Dkt. 21, Court's Order of April 17, 2019), and stayed the case pending resolution of plaintiff's state court proceedings. (See Dkt. 38, Court's Order of July 12, 2019 at 2). Following the conclusion of the state proceedings, the court lifted the stay on July 8, 2024. (See Dkt. 77, Court's Order of July 8, 2024). Defendants then filed the instant Motion. (See Dkt. 78, Motion).

## LEGAL STANDARDS

I.   RULE 12(b)(1).[3]

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994). The courts are presumed to "lack jurisdiction unless the contrary appears affirmatively from the record." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n. 3, 126 S.Ct. 1854, 1861 n. 3 (2006). Because jurisdiction is a preliminary issue, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction[.]" Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31, 127 S.Ct. 1184, 1191 (2007). The burden of establishing the existence of subject matter jurisdiction "rests upon the party asserting jurisdiction[.]" Kokkonen, 511 U.S. at 377, 114 S.Ct. at 1675.

---

[3] All "Rule" references are to the Federal Rules of Civil Procedure unless otherwise indicated.

1    "Rule 12(b)(1) jurisdictional attacks can be either facial or factual."  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  "The district court resolves a facial attack, as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014).

II.    RULE 12(b)(6).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010).  Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266,

268, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. See Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984), abrogated on other grounds by Neitze v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989); 2 Moore's Federal Practice § 12.34[4][b] ("Dismissal under Rule 12(b)(6) . . . is also appropriate when a successful affirmative defense or other bar to relief on the claim is conclusively established on the face of the complaint.").

## DISCUSSION

Although defendants move to dismiss plaintiff's Complaint pursuant to Rule 12(b)(6), (see Dkt. 78-1, Memorandum of Points and Authorities in Support of Motion to Dismiss ("Memo.")), the court will first consider the jurisdictional bar posed by the Rooker-Feldman doctrine because a challenge under that doctrine "is a challenge for lack of subject-matter jurisdiction and may be raised at any time by either party or sua sponte by the court." Riding v. Cach LLC, 992 F.Supp.2d 987, 992 (C.D. Cal. 2014).

I.     ROOKER-FELDMAN DOCTRINE.

Under the Rooker-Feldman doctrine, "federal district courts do not have jurisdiction to hear de facto appeals from state court judgments." Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2010). "A de facto appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'" Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013) (quoting Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003)). A federal court must refuse to hear not only "a forbidden de facto appeal from a judicial decision of a state court[,]" but also "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." Noel, 341 F.3d at 1158. "To determine whether an action functions as a de facto appeal [of a state court

judgment], we pay close attention to the relief sought by the federal-court plaintiff." Cooper v. Ramos, 704 F.3d 772, 777-78 (9th Cir. 2012) (internal quotation marks omitted). If "the relief requested in the federal action would effectively reverse the state court decision or void its ruling[,]" the claims are "inextricably intertwined" and the federal action must be dismissed for lack of subject matter jurisdiction. Id. at 779 (internal quotation marks omitted). "[A]ny other rule would result in a waste of judicial resources and unnecessary friction between state and federal courts." Worldwide Church of God v. McNair, 805 F.2d 888, 891 (9th Cir. 1986).

    Here, plaintiff seeks an order: "(i) reversing the outcome and findings regarding the charges filed against him; (ii) expunging his disciplinary record; (iii) removing any record of his expulsion from his education file and/or transcript; and (iv) permanently destroying any record of the third-party complaint." (Dkt. 1, Compl. at ¶ 251). Plaintiff seeks damages on the ground that he was "subjected to a biased, prejudiced and inherently unfair process in violation of Title IX." (See id. at ¶¶ 194-96).

    The question of whether USC's decision to expel plaintiff was erroneous is the same issue plaintiff litigated before the state courts, and reversal of USC's decision is the same relief he previously sought. (See Dkt. 78-6, Petition at 28-30). In other words, the state courts already considered and rejected plaintiff's claim that USC's decision was erroneous and that the process was unfair. See Boermeester, 15 Cal.5th at 97-98 (concluding the process was fair); Boermeester, 100 Cal App.5th at 387 (affirming denial of the writ and finding substantial evidence supported USC's decision). As such, the instant action constitutes a de facto appeal of the state courts' decisions and raises issues that are "inextricably intertwined" with those decisions. See Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003) (finding that Rooker-Feldman doctrine applied where plaintiff "essentially asked the federal court to review the 'state court's denial in a judicial proceeding,' and to afford him the same individual remedy he was denied in state court") (citation omitted); Ezor v. McDonnell, 2022 WL 1184187, *1 (9th Cir. 2022) ("The district court properly dismissed [plaintiff's] claims contesting the validity of the [state court decision] because they are a forbidden de facto appeal of state court proceedings and raise issues that are inextricably intertwined with those proceedings.") (internal quotation marks omitted); Cooper, 704

F.3d at 779 (noting that claims were "inextricably intertwined" for purposes of the Rooker-Feldman doctrine where "the relief requested in the federal action would effectively reverse the state court decision or void its ruling") (internal quotation marks omitted) (emphasis added). Accordingly, the court finds the Rooker-Feldman doctrine bars plaintiff's claims. See, e.g., Dover v. Haley, 2013 WL 6190165, *6 (D. Or. 2013), aff'd, 616 F.Appx. 295 (9th Cir. 2015) (dismissing plaintiff's claims based on the Rooker-Feldman doctrine where plaintiff sought to reverse administrative decision revoking his medical license); Read v. Haley, 650 F.Appx. 492, 493 (9th Cir. 2016) (affirming application of the Rooker-Feldman doctrine where plaintiff sought to challenge administrative revocation of medical license).

## II. EXHAUSTION OF JUDICIAL REMEDIES DOCTRINE.

Even if plaintiff's action were not barred by the Rooker-Feldman doctrine, it would be barred by similar principles of judicial comity under the preclusion doctrines of judicial exhaustion and collateral estoppel. Citing Westlake Cmty. Hosp. v. Superior Court, 17 Cal.3d 465 (1976), defendants argue that plaintiff's Complaint is barred because he failed to overturn USC's decision through the state mandamus process and that this is a necessary prerequisite to seeking civil damages under California's doctrine of judicial exhaustion. (See Dkt. 78-1, Memo. at 13-15).

The doctrine of exhaustion of judicial remedies provides that a plaintiff must first challenge a quasi-judicial proceeding though a petition for writ of mandamus before challenging the result of the proceeding in a separate action.[4] In Westlake, the California Supreme Court held that "the exhaustion of remedies doctrine fully applies to actions seeking damages for an allegedly wrongful termination of or exclusion from membership in a private association." Id. at 476-77. There, a private hospital had revoked a doctor's medical staff privileges, id. at 469-71, and the tort action the doctor filed against the hospital "rest[ed] on a contention that defendants intentionally and

---

[4] The California Supreme Court has explained that "[t]he doctrine of exhaustion of judicial remedies . . . is distinct from the jurisdictional rule that requires exhaustion of administrative remedies before filing suit in certain circumstances. Rather, it is a form of res judicata, of giving collateral estoppel effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action." Y.K.A. Indus., Inc. v. Redevelopment Agency of City of San Jose, 174 Cal.App.4th 339, 355 (2009) (emphasis added).

maliciously misused a quasi-judicial procedure in order to injure her[.]" Id. at 484. The California Supreme Court found that the "plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants." Id. at 484. "[S]o long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the hospital's action." Id.

While is clear that the judicial exhaustion doctrine applies where an individual seeks to challenge a university disciplinary proceeding, see, e.g., Gupta v. Stanford Univ., 124 Cal.App.4th 407, 411-13 (2004) (finding that plaintiff who sued university in tort before pursuing administrative mandamus "failed to exhaust his judicial remedies prior to filing his claim"); Doe v. Regents of the Univ. of California, 891 F.3d 1147, 1155 (9th Cir. 2018) ("UCSB's suspension of Doe is the sort of 'adjudicatory, quasi-judicial decision' that is subject to the judicial exhaustion requirement."); Doe v. Cal. Inst. of Tech., 2019 WL 4238888, *3 (C.D. Cal. 2019) ("Plaintiff has exhausted his judicial remedies by asserting a cause of action under § 1094.5 in the FAC[.]"), it is less clear, however, whether this exhaustion requirement requires that a plaintiff successfully set aside the administrative decision in order to pursue a civil damages action. Defendants argue that under Westlake and City of Fresno v. Superior Court, 188 Cal.App.3d 1484 (1987), plaintiff was required to succeed in having USC's decision overturned before pursing civil claims concerning the decision. (See Dkt. 78-1, Memo. at 14-15). Both Westlake and City of Fresno contain language suggesting that setting aside an administrative decision is a necessary precursor to further challenges. See Westlake, 17 Cal.3d at 484 (holding that "plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants[]"); City of Fresno v. Superior Ct., 188 Cal.App.3d 1484, 1489 (1987) ("As in Westlake, the failure of [plaintiff] to challenge successfully the board's administrative decision renders his tort action premature."). But both cases also involve situations where a plaintiff failed to pursue all available judicial remedies. In Westlake, the plaintiff "did not challenge the revocation through a mandamus proceeding but instead immediately instituted the instant action." 17 Cal.3d at 485. And in City of Fresno, the plaintiff filed a petition for writ of mandate in the superior court challenging his

1  termination but then "voluntarily dismissed his petition before a final disposition." 188 Cal.App.3d
2  at 1489.
3      Defendants cite no case, and the court has found none, in which a student who pursued
4  a mandamus challenge and failed to overturn a university decision in that proceeding was barred
5  from challenging the decision in an action for civil damages. See e.g., Doe v. Regents, 891 F.3d
6  at 1155 (suggesting that "[a] party must exhaust judicial remedies by filing a § 1094.5 petition[.]"
7  (emphasis added)); see also Johnson v. City of Loma Linda, 24 Cal.4th 61, 70 (2000) (describing
8  the Westlake requirement that a party exhaust judicial remedies and citing cases in which plaintiffs
9  failed to challenge the administrative decision). In an unpublished opinion, however, the Ninth
10 Circuit suggested that Westlake's requirement of judicial exhaustion requires that a plaintiff
11 successfully set aside the university's decision in the mandamus proceeding in order to pursue
12 a damages claim. See Dixon v. Univ. of S. California, 2024 WL 866028, *1 (9th Cir. 2024) ("Dixon
13 was thus required to 'first succeed in overturning the quasi-judicial action' – his Title IX proceeding
14 at USC – via a petition for writ of administrative mandate before he could pursue his damages
15 claims against USC.") (citing Johnson, 24 Cal.4th at 70).
16     The court is mindful of principles of judicial comity that might preclude a federal court from
17 inquiring into the propriety of a quasi-judicial administrative proceeding which the state has already
18 upheld in a mandamus proceeding. See Y.K.A., 174 Cal.App.4th at 355 (discussing purpose of
19 the judicial exhaustion doctrine). To the extent the doctrine of exhaustion of judicial remedies is
20 intended to serve as a form of res judicata or collateral estoppel, see id., the court finds that
21 application of the doctrine is warranted here. Plaintiff had the opportunity to litigate the fairness
22 of his proceeding through the mandamus process. See Boermeester, 100 Cal.App.5th at 387.
23 As the state appellate court observed, "the amount of process Boermeester received was
24 'considerable.' USC's process involved four layers of review, three of which were appellate. . . .
25 Boermeester then applied for a fifth layer of review by filing in the superior court. He was granted
26 that review. Boermeester then sought and obtained a sixth and seventh layer of review, in this
27 court and the Supreme Court." Boermeester, 100 Cal.App.5th at 404.
28

In the mandamus proceeding, plaintiff raised several challenges to the fairness of the underlying administrative proceeding, but did not raise any issues relating to gender bias, which are the focus of his Complaint seeking to overturn USC's decision. (Compare Dkts. 78-5 & 78-6, Petition with Dkt. 1, Compl.). Plaintiff offers no explanation as to why he could not have raised these issues in the mandamus proceeding – the "exclusive judicial remedy for reviewing administrative action[,]" Y.K.A., 174 Cal.App.4th at 355 – yet he now argues that because these challenges "were neither raised nor resolved in the state court mandamus litigation[,]" judicial review is warranted and issue preclusion is inappropriate. (See Dkt. 81, Plaintiff's Memorandum of Points and Authorities In Support of Opposition to Defendants' Motion to Dismiss ("Opp.") at 11 & 19). But if plaintiffs who are unsuccessful in setting aside an administrative proceeding through a mandamus action are permitted to subsequently challenge the same proceeding in a civil damages action by raising slightly different fairness challenges, this could create problematic incentives, and moreover, upset principles of judicial comity and the respect afforded to state proceedings.[5] See 28 U.S.C. § 1738 ("[J]udicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State[.]"); see, e.g., Collins v. Wells Fargo Bank, 2013 WL 3808097, at *9 (D. Ariz. 2013) ("'[R]es judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal

---

[5] To the extent that a mandamus proceeding is limited only to addressing certain issues, see Cal. Civ. Proc. Code § 1094.5, or in cases where a state proceeding declines to consider claims properly raised, there might be a colorable argument that a subsequent civil action would be appropriate in some circumstances. See also Boermeester, 15 Cal.5th 72 ("Judicial review [of a writ of administrative mandate] is limited to whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.") (internal quotation marks omitted). But in general, courts have found that the mandamus procedure at issue here affords sufficient opportunity to raise constitutional claims. See, e.g., Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992) (holding that the § 1094.5 procedure provided the plaintiff a "meaningful opportunity" to raise constitutional claims); Joseph v. City of San Jose, 2020 WL 1031899, *14 (N.D. Cal. 2020) ("Plaintiff may invoke a writ of mandate under California Civil Code § 1094.5 to challenge alleged federal constitutional violations here."). And plaintiff has offered no explanation as to why he did not raise his gender discrimination claims during the state's inquiry into the fairness of the administrative proceeding.

system.'") (quoting Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415 (1980)). Thus, under the circumstances here, the court is persuaded that plaintiff's mandamus proceeding should be afforded preclusive effect, given its finality and his failure to raise additional arguments during the state proceedings. See Y.K.A., 174 Cal.App.4th at 355; Dixon, 2024 WL 866028, at *1 (suggesting the doctrine requires successfully setting aside an administrative proceeding).[6] In any event, given that the caselaw on the judicial exhaustion doctrine in the context of university administrative proceedings is limited, the court proceeds to consider these issues under the more traditional framework of issue preclusion.

III.   ISSUE PRECLUSION AND FAILURE TO STATE A CLAIM.

Next, defendants argue that plaintiff's complaint should be dismissed under the doctrine of issue preclusion because the California Supreme Court and Court of Appeal rulings preclude him from establishing an essential element of each of his claims. (See Dkt. 78-1, Memo. at 15-23). The court largely agrees. Because issue preclusion also affects plaintiff's ability to state a claim, the court considers these two issues jointly. That is, even accepting plaintiff's allegations as true, and viewing them in the light most favorable to plaintiff, see Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200, the court finds that all of plaintiff's claims must be dismissed pursuant to Rule 12(b)(6).

"The doctrine of preclusion aims to prevent a dispute resolved in one case from being relitigated in a later case." Kim v. New Life Oasis Church, 2025 WL 670345, *3 (Cal. App. Ct. 2025). "In determining the preclusive effect of a state administrative decision or a state court judgment, we follow the state's rules of preclusion." White v. City of Pasadena, 671 F.3d 918, 926 (9th Cir. 2012) (citing Kremer v. Chem. Const. Corp., 456 U.S. 461, 482, 102 S.Ct. 1883, 1898

---

[6] The court's review of similar cases suggests damages claims have only proceeded where a plaintiff has successfully set aside the underlying administrative proceeding. See, e.g., Doe v. Regents of Univ. of California, 23 F.4th 930, 934 (9th Cir. 2022) ("The [state] court therefore entered judgment in Doe's favor, the Regents' decision and sanction were vacated and set aside[.]"); Dixon, 2024 WL 866028, at *1 ("Dixon filed a mandamus petition against USC in California state court challenging the Title IX investigation, and he ultimately had his expulsion set aside in October 2019.").

(1982)). Issue preclusion[7] "prevents relitigation of previously decided issues, rather than causes of action as a whole. It applies only (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." Samara v. Matar, 5 Cal.5th 322, 327 (2018) (internal citations and quotation marks omitted).

A. Title IX Claim.

To plausibly allege that he was discriminated against on the basis of his sex in violation of Title IX, plaintiff must allege specific instances of bias in his disciplinary proceedings. See Doe v. Regents of Univ. of California, 23 F.4th at 938. To the extent that plaintiff seeks to relitigate the "erroneous outcome" or whether "USC failed to conduct an adequate, reliable, and impartial investigation" in his case or deprived him "of a meaningful opportunity to be heard[,]" these identical issues were already necessarily decided in the prior state proceeding and are barred by issue preclusion. (See Dkt. 1, Compl. at ¶¶ 169-71); Boermeester, 15 Cal.5th at 97-98 (concluding the process was fair); Boermeester, 100 Cal.App.5th at 387 (affirming denial of the writ and finding substantial evidence supported USC's decision). Similarly, several of the circumstances plaintiff alleges are indicative of gender bias are merely examples of USC complying with its Title IX and disciplinary processes and are challenges he unsuccessfully raised in the state petition. (See, e.g., Dkt. 1, Compl. at ¶¶ at 171) ("USC decided to pursue an investigation against Mr. Boermeester after receiving a third-party complaint[.]"); (id.) ("USC deprived Mr. Boermeester of a meaningful opportunity to be heard when its policies did not allow for a hearing before a panel of impartial decisionmakers[.]"); (id.) ("USC deprived Mr. Boermeester of the opportunity to challenge and question adverse witnesses[.]"). Insofar as plaintiff's Title IX claim rests on relitigating the fairness or outcome of the investigation, plaintiff's claim is barred by collateral estoppel.

---

[7] "Courts now refer to *claim preclusion* rather than *res judicata*, and to *issue preclusion* rather than *collateral estoppel*." Kim, 2025 WL 670345, at * 3.

In support of his Title IX claim of gender bias, plaintiff has primarily alleged general external pressure on universities to comply with Title IX and address sexual misconduct allegations on campus. (See Dkt. 1, Compl. at ¶¶ 171-88). Arguably, the only allegations of bias specific to his case are the mention of his student-athlete status and his contention that the process was biased in favor of believing the victim. (See id. at ¶ 171). His allegations that USC referred to him as an "all-star football player" and that a Title IX official told the victim that they knew "how to deal with football players" are insufficient to plausibly allege gender bias. (See id.).

Plaintiff also alleges that USC's treatment of the victim as a "battered woman" – specifically, the fact that investigators found her initial statement to be more credible than her subsequent recantation – is suggestive of gender bias. (See Dkt. 1, Compl. at ¶¶ 14, 135 & 171). However, this contention is undermined by the Court of Appeal's express recognition that the victim's initial statement was corroborated by other sources and with its assessment that the decision to find the initial statement more credible was neither erroneous nor an indicator of bias. See Boermeester, 100 Cal.App.5th at 397-98 ("As we have previously explained, there is nothing questionable about choosing to find a victim's initial statement more credible than a later recantation of that statement, particularly in domestic violence cases. . . . There is likewise nothing questionable about finding a victim more credible than the alleged attacker."); id. at 403 n. 9 ("We note Boermeester also claims the investigator 'disregarded the parties' own written submissions entirely, except to bolster her own unsupported opinion that [Roe] is a victim of domestic violence.' This is simply a claim that the investigator was biased against him. We rejected that claim in our first opinion."). These findings cannot be relitigated. That plaintiff now raises the same issues under the guise of gender bias is unpersuasive because the issue of whether it was improper to find the victim's initial statement more credible was already necessarily decided. See Samara, 5 Cal.5th at 327.

Although plaintiff did not previously allege gender bias, the court found his general allegations of bias to be unsubstantiated. See Boermeester, 100 Cal.App.5th at 392 ("To the extent Boermeester argues USC's Title IX office was biased against him, an argument that appears throughout his appellate briefs, he has presented no legal or factual basis to support this argument other than to say its decisions were not in his favor[.]"). Without "allegations of an

internal pattern and practice of bias and of specific instances of bias[,]" plaintiff's allegations of external pressures and vague references to him being a football player are insufficient to plausibly allege a claim of gender discrimination. See, e.g., Doe, 23 F.4th at 937-38 (9th Cir. 2022) (holding that external pressures, alone, would be "possibly insufficient to survive a motion to dismiss"). The court thus dismisses his Title IX claim based on issue preclusion and failure to state a claim.

B.  Fourteenth Amendment Claim.

As defendants argue, (Dkt. 78-1, Memo. at 23-27), plaintiff has failed to state a claim under the Fourteenth Amendment because he has not adequately alleged facts supporting state action, an essential requirement under 42 U.S.C. § 1983. See Naffe v. Frey, 789 F.3d 1030, 1035-36 (9th Cir. 2015) ("To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law."). Plaintiff raised a due process challenge in his mandamus proceeding, and the California Supreme Court found that "[d]ue process . . . does not apply here since no state action is involved." Boermeester, 15 Cal.5th at 87; id. ("Because this matter involves a private university, no constitutional rights are at stake and a greater degree of flexibility is warranted.").

Plaintiff fails to allege sufficient facts to plausibly suggest state action under any of the relevant tests. Plaintiff alleges state action pursuant to the "public function" test, (see Dkt. 1, Compl. at ¶¶ 214 & 216), but has failed to proffer sufficient allegations or argument to support such a theory. (See, generally, Dkt. 81, Opp. at 25-26). His argument is devoid of legal authority, and his argument that USC is a state actor by virtue of "carrying out its internal disciplinary procedures[,]" (see id. at 26), is unsupported by any authority. Indeed, caselaw indicates that the fact that defendants are required to enforce Title IX does not transform them into state actors. See, e.g., Heineke v. Santa Clara Univ., 965 F.3d 1009, 1014 (9th Cir. 2020) (noting that a private university "does not become a state actor merely by virtue of being required by generally applicable civil rights laws to ameliorate sex (or any other form of) discrimination in educational activities as a condition of receiving state funding"). The court thus dismisses his Fourteenth Amendment claim for failure to state a claim.

C.   Contract and Promissory Estoppel Claims.

Plaintiff's breach of contract claim alleges that USC made express contractual commitments to plaintiff regarding its disciplinary process and that USC violated its own policies by, among other things, imposing an interim suspension, "fail[ing] to conduct a fair and impartial review of the incident[,]" and finding plaintiff "responsible for a violation of USC's policy on intimate partner violence . . . despite the absence of any evidence showing he caused . . . such harm." (See Dkt. 1, Compl. at ¶¶ 255-65). His promissory estoppel claim rests on the same allegations regarding USC's policies and alleged promises. (See id. at ¶¶ 266-72); see also Dixon v. Univ. of S. California, 2021 WL 6496737, *5 (C.D. Cal. 2021) ("As the breach and contract claim and promissory estoppel claim here depend on the same alleged 'promises,' the Court considers the arguments together.").

As noted above, the state court already upheld the fairness of the proceeding and found there was sufficient evidence for the violation. See Boermeester, 15 Cal.5th at 97-98 (concluding the process was fair); Boermeester, 100 Cal.App.5th at 387 (affirming denial of the writ and finding substantial evidence supported USC's decision). Because plaintiff's contract and promissory estoppel claims rest on USC's alleged failure to "adhere to its stated policies" regarding the Title IX investigative process and its denial of his "procedural rights," (see Dkt. 1, Compl. at ¶¶ 256 & 268) – questions which implicate the fairness of the proceeding – they are barred. In other words, litigation of these claims is barred by issue preclusion given that these "identical issue[s]" were asserted by plaintiff against USC and were "actually litigated and necessarily decided in the first suit" "after final adjudication." Samara, 5 Cal.5th at 327. And without being able to allege breach of policies regarding a fair process, or injury based on his reliance, plaintiff also fails to state a claim under these theories.

D.   Negligence and Intentional Infliction of Emotional Distress Claims.

Plaintiff's claims of negligence, (see Dkt. 1, Compl. at ¶¶ 273-81), and intentional infliction of emotional distress, (see id. at ¶¶ 282-88), fail for similar reasons.

To state a claim for negligence, plaintiff must allege that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach proximately or legally

caused (4) the plaintiff's damages or injuries." Thomas v. Stenberg, 206 Cal.App.4th 654, 662 (2012). Plaintiff has not adequately identified any duty of care USC owed him. See, e.g., Day v. California Lutheran Univ., 2024 WL 649239, *5 (C.D. Cal. 2024) (dismissing claim where plaintiff failed to identify applicable duty of care). Plaintiff alleges USC owed him a duty of care against foreseeable harm from third parties, (see Dkt. 1, Compl. at ¶ 275); (Dkt. 81, Opp. at 29-30), and "a duty to conduct the disciplinary process with due care." (Dkt. 1, Compl. at ¶ 276). He argues that these duties were breached "when [he] did not receive the full protections of the disciplinary process, and when he was subjected to a biased and defective procedure." (See id. at ¶ 278). However, the duty of care against foreseeable harm from third parties is irrelevant here. He also provides no legal authority to support USC's alleged duty to conduct the disciplinary process with due care. (See, generally, Dkt. 81, Opp. at 29-30). Moreover, even if USC owed him a duty to fairly conduct disciplinary proceedings, plaintiff cannot adequately allege or establish the breach element because the state court has already concluded the proceeding was fair. See Boermeester, 15 Cal.5th at 97-98 (concluding the process was fair); Boermeester, 100 Cal.App.5th at 387 (affirming denial of the writ and finding substantial evidence supported USC's decision).

Under California law, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009). Here, the conduct plaintiff alleges to be outrageous includes "impos[ing] an interim suspension" and "pursu[ing] an investigation against Mr. Boermeester despite the alleged victim's repeated declarations that he had not engaged in any prohibited conduct[.]" (See Dkt. 1, Compl. at ¶ 283). Again, plaintiff seeks to have the court disturb the state court's findings regarding the fairness and outcome of the investigation. In light of the state court's decisions affirming both, plaintiff's allegations that the proceeding was "outrageous," (see id.), are not plausible and this element of his claim necessarily fails.

IV. **LEAVE TO AMEND.**

Rule 15 provides that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990) (The policy favoring amendment must "be applied with extreme liberality."). However, "[i]t is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330, 91 S.Ct. 795, 802 (1971).

Here, having liberally construed the allegations in the Complaint, the court is persuaded that plaintiff's claims cannot be saved through amendment given the jurisdictional deficiency and issues of collateral estoppel at play. The court thus sees no basis to give plaintiff an opportunity to amend his complaint. See <u>Lopez v. Smith</u>, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely."). Finally, given that plaintiff's claims are barred as a matter of law, <u>see</u> <u>supra</u> §§ I. & II., the court is not persuaded that discovery is necessary for plaintiff to establish that he can overcome the fundamental defects discussed above or that he has sufficiently alleged facts to state a viable claim. Accordingly, plaintiff's Complaint will be dismissed without leave to amend.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss **(Document No. 78)** is **granted**.

2. Plaintiff's Complaint **(Document No. 1)** is **dismissed with prejudice.**

3. Judgment shall be entered accordingly.

Dated this 10th day of March, 2025.

/s/
Fernando M. Olguin
United States District Judge